JOHN JAQUES AND SON *vs.* PARKER BROTHERS.

Essex.    November 11, 1904. — May 18, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Contract,* Construction, Performance and breach, Waiver.

In an action for the price of one thousand gross of ping pong balls shipped by the plaintiff to the defendant under an alleged contract for the sale and shipment of a much larger number of like ping pong balls, of which all the others had been delivered and paid for, it was *held,* that the correspondence described in the opinion warranted a finding by the judge who heard the case, without a jury, upon

an agreed statement of facts with the power to draw inferences, either that the defendant, there being no dispute as to the price, absolutely had undertaken to receive and pay for nine hundred thousand balls not to be delivered before November 20 of the year when the contract was made, subject to an agreement on the part of the plaintiff to turn them out more quickly if it could do so, and that the defendant was bound to receive and pay for the thousand gross in controversy, or that, if there was an agreement on the part of the plaintiff that shipments should be made at the rate of two thousand gross per month and that they should be completed by October 20, those requirements were waived by the defendant.

MORTON, J.   This is an action of contract to recover for the price of one thousand gross of match ping pong balls, the last of six thousand two hundred and fifty gross, all the rest of which have been shipped by the plaintiff to and have been received and paid for by the defendant.   The plaintiff is a corporation organized under the laws of Great Britain and the defendant is a corporation organized under the laws of the State of Maine. The case was heard upon agreed facts by a judge of the Superior Court without a jury and with the power to draw all proper inferences of fact.   The judge found for the plaintiff, and the case is here on exceptions by the defendant to the refusal of the judge to give certain rulings asked for by it.

The question at issue relates to the terms of the contract between the plaintiff and the defendant.   The defendant contends in substance that the balls were to be shipped by the plaintiff at the rate of two thousand gross per month, that the last shipment was to be made by October 20, 1902, and that the plaintiff did not make the shipments at the rate or time agreed and in consequence thereof the defendant refused, as it had the right to do, to receive the last shipment, the price of which is sued for.   The plaintiff denies that it agreed to ship the balls at the rate of two thousand gross a month, or to complete the shipments by October 20, 1902, and it contends that it has done all that it agreed to do, and further alleges that, if there was any agreement on its part to make the shipments at the rate and to complete them by the time named, those provisions were waived by the defendant.

The contract is found in a long series of letters and cablegrams between the parties which are set out in the agreed facts and which begin with a letter of inquiry from the defendant dated April 24, 1902, to which the plaintiff replied, and end with a

letter also from the defendant dated March 10, 1903. The later part of the correspondence is in relation to the controversy which then had arisen. On June 10 the defendant wrote asking the plaintiff to cable price for one thousand gross " match ping pong balls, best quality, and of the cream shade " and saying that it should want them in shipments of about three hundred gross per month. To this the plaintiff cabled a reply naming price " subject to immediate reply by wire," and on the next day the defendant cabled " Enter order one thousand gross. Ship part ", and followed this with a letter two days later confirming the order thus sent. No question arises as to this order, or the contract thus made. Less than a week later, June 26, the defendant cabled the plaintiff as follows : " Negotiating one million best balls. Cable special proposition million best quality match," and on June 30 the plaintiff replied by cable " will accept immediate order 7/3 [meaning seven shillings three pence per gross] less 2 1-2 % delivery to be completed about end of the year." Some cablegrams followed in regard to the price, the plaintiff declining to make a lower price but nothing further being said about the time of delivery, and on July 8 the defendant cabled plaintiff, " Increase order to four thousand gross 7/3," and on July 11, " Increase our order to five thousand less the customary discount. Ship part at once, remainder to follow." On July 12 the plaintiff cabled that it could discount 7/3 if the order was increased to nine hundred thousand. This cablegram was sent in the code and an error was made by the cable company in the transmission, the word " inanition " being transmitted " fanition." " Inanition " means " increase order." To this on the fifteenth the defendant replied by cable " Cannot translate the word ' fanition.' Otherwise accepted." Upon receipt of this cablegram the plaintiff caused its message to be repeated correctly, though the mistake does not appear to have substantially affected the defendant's understanding of it. So far the result would seem to have been an arrangement between the parties that the plaintiff should furnish and the defendant take nine hundred thousand balls at 7/3 per gross less customary discount of two and one half per cent, part to be shipped at once and the remainder to follow and the shipments to be completed by the end of the year. In the meantime the defendant had written to the plaintiff on July 7

confirming the order for four thousand gross, and directing the shipments to be made at the rate of one thousand gross a month and to be completed before October 10.   On July 15 the plaintiff wrote to the defendant reciting the various cablegrams and explaining the mistake in that of the same date in regard to the use of the word " fanition," and expressing the hope of hearing from the defendant in full confirmation of the order.   On July 17 the plaintiff wrote acknowledging the receipt of the defendant's letter of July 7 and saying " With regard to the deliveries we cannot give you a definite date as early as that mentioned in your order, but we hope to have the entire order delivered by November 20, and if we find that we can turn them out quicker we will do so."   On the same day the defendant wrote to the plaintiff confirming the increase of its order to nine hundred thousand balls and directing that they should be shipped at the rate of two thousand gross per month.   This letter was acknowledged by the plaintiff in one from it to the defendant bearing date July 28 in which it says, speaking of the matter of deliveries, " Your Mr. Richardson and our previous letters will have informed you as to deliveries, but we feel sure we shall be able to keep you supplied."   It is agreed that this reference to Mr. Richardson is immaterial to the matter in controversy.   No further correspondence seems to have passed between the parties in reference to the time when the deliveries were to be made unless a request by the defendant in a letter of August 8 to the plaintiff to be advised on receipt of it how promptly the plaintiff would make shipments and whether it would be sure to put two thousand gross on the steamer in August and on what dates it would ship, and the plaintiff's reply dated August 18 in which it gave the shipments that had been made and would be made in August, making eighteen hundred gross in all, and added that its new plant would come into operation next month when it would " not only pick up the quantity required, but send you at least two thousand gross during September, and your order will be completed by the end of October " can be so regarded. Subsequently on August 29 the defendant wrote the plaintiff to delay its next shipment to September 20 and on September 2 cabled the plaintiff to make the next shipment October 1, that is, to delay still further.   The plaintiff however objected to delay

and thereupon the defendant wrote to the plaintiff that it might make shipments of five hundred or a thousand gross at a time, and on September 17 the plaintiff shipped six hundred gross and on September 30 one thousand gross, which were promptly paid for by the defendant. The plaintiff also shipped on October 13 six hundred gross and on October 24 one thousand gross which likewise were paid for promptly by the defendant. On October 24 the defendant wrote requesting the plaintiff to ship the balance of the order in two shipments immediately after the first of the year and on the next day cabled the plaintiff to cease all shipments. The plaintiff had the balance of the goods, one thousand gross, ready for shipment and after some correspondence shipped them to the defendant on November 21 and the defendant declined to receive them. Thereupon after some further correspondence this action was brought.

We think it is plain from this review of what passed between the parties that the judge would have been justified in finding, and, for aught that appears, did find either, that the defendant, there being no dispute as to the price, had absolutely undertaken to receive and pay for nine hundred thousand balls not to be delivered before November 20, subject to the plaintiff's agreement to turn them out more quickly if it could do so, and that the defendant was bound to receive and pay for the thousand gross in controversy, or that, if there was an agreement on the plaintiff's part that shipments should be made at the rate of two thousand gross per month, and that they should be completed by October 20, those requirements were waived by the defendant. In either view the finding of the judge in favor of the plaintiff would be well warranted. This view of the case renders it unnecessary, we think, to consider *seriatim* the various rulings that were requested by the defendant and refused, though we may say that we discover no error in the way in which the judge dealt with them.

*Exceptions overruled.*

*F. H. Noyes*, for the defendant.
*B. G. Davis*, for the plaintiff.